## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

**BRANDON BODDY,**

      **PLAINTIFF**

**VS.**                                                      **CAUSE NO.: _____**

                                                 **Jury Trial Demanded**

**CITY OF MEMPHIS, TENNESSEE;**
**OFFICER D. KINSLER, in his**
**official and individual capacity; and OFFICER**
**W. CARTER, in his official and**
**individual capacity,**

      **DEFENDANTS.**

## COMPLAINT FOR DAMAGES

COMES NOW, the Plaintiff, Brandon Boddy, by and through undersigned Counsel, filing this *Complaint for Damages* and in support thereof, would show this Honorable Court the following, to-wit:

### I.      INTRODUCTION

1.     This is an action against Defendants for federal constitutional violations and state law personal injuries suffered by Plaintiff as a result of their unlawful detention while Defendants acted under color of state law. Plaintiff brings this action for compensatory damages under 42 U.S.C. § 1983 because Defendants jointly and/or severally deprived Plaintiff of his federally-protected civil liberties and privileges to be free from unreasonable excessive force, to be free from unlawful search and seizure, to be free from arrest without just cause, and to be free to speak freely. U.S. CONST. amends. I, IV, XIV.

2.     As a direct consequence of the policies, practices, and procedures of the City of Memphis

(hereinafter "Defendant City"), Plaintiff was intentionally deprived of his constitutional rights guaranteed by the Fourth, First, and Fourteenth Amendments to the United States Constitution. Defendant Officer D. Kinsler and Defendant Officer W. Carter (collectively "Defendant Officers")[1], police officers acting within the course and scope of their employment with the City of Memphis, and acting under color of state law, unjustifiably used excessive and unreasonable force, retaliated against Plaintiff's exercise of his right to speak freely, failed to intervene, and falsely arrested Plaintiff without probable cause and under circumstances where no reasonable police officers would have done so. Under well-established law on the above violations, Defendant Officers are not entitled to qualified or other immunity for these actions.

## II. JURISDICTION AND VENUE

3.      This action is brought pursuant to 42 U.S.C. § 1983 and § 1988 and the First, Fourth, and Fourteenth Amendment to the United States Constitution, made applicable to Defendants through the Fourteenth Amendment to the United States Constitution. This Court has jurisdiction over Plaintiff's claim under 28 U.S.C. § 1331 (federal question) and under 28 U.S.C. § 1343(a)(3) (civil rights). This Court further has jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367 (supplemental jurisdiction) as those claims form part of the same case or controversy under Article III of the United States Constitution.

4.      Venue is proper under 28 U.S.C. § 1391(b) because Defendant City is deemed to reside in any judicial district in which it is subject to the Court's personal jurisdiction with respect to the

---

[1] The true names and capacities of Defendant Officers are currently unknown to Plaintiff who therefore sues these Defendants by assumed names. However, Defendant Officers are believed to be individual officers of MPD. Plaintiff is informed and believes, and thereon alleges, that each of the Defendant Officers violated Plaintiff's federal constitutional rights or is otherwise legally responsible in some other actionable manner for the events and happenings referred to in this Complaint, and that Plaintiff's injuries and damages as alleged in this Complaint were caused by that violation or wrongful conduct. Plaintiff will amend this Complaint and state the true names and/or capacities of Defendant Officers when they have been ascertained.

civil action in question; Defendant Officers are employees of Defendant City who acted in their official capacity or under color of legal authority; and all events, actions, and injuries giving rise to this claim occurred within the Western District of Tennessee.

### III. PARTIES

5.      Plaintiff, Brandon Boddy, is an adult citizen of Shelby County, Tennessee, who resides at 6743 Sever Valley Drive, Memphis, Tennessee 38141.

6.      Defendant City is a municipality, duly incorporated under the laws of the State of Tennessee within the United States District for the Western District of Tennessee and, as such, is a political subdivision of the State of Tennessee. Amongst its many functions, the City of Memphis operates and maintains a law enforcement agency known as the Memphis Police Department (hereinafter "MPD"). The City is under a duty to operate its police activities in a lawful manner to preserve the peace and dignity of the City and the rights, privileges, and immunities guaranteed and secured to its residents and visitors pursuant to the Constitution and the laws of the State of Tennessee. The City may be served with process through Mayor Jim Strickland at Memphis City Hall, 125 North Main Street, Room 700, Memphis, Tennessee 38103.

7.      Defendant Officer D. Kinsler (hereinafter "Officer Kinsler") is an individual employed in Memphis, Shelby County, Tennessee. The acts and omissions complained of herein arise from the conduct of Officer Kinsler while he was acting under color of state law, and each act and omission was committed pursuant to Officer Kinsler's employment and authority as a police officer with the City of Memphis. Officer Kinsler may be served with process at Memphis Police Department (Ridgeway Station) at 3840 Ridgeway Road, Memphis, Tennessee 38115.

8.      Defendant Officer W. Carter (hereinafter "Officer Carter") is an individual employed in Memphis, Shelby County, Tennessee. The acts and omissions complained of herein arise from the

3

conduct of Officer Carter while he was acting under color of state law, and each act and omission was committed pursuant to Officer Carter's employment and authority as a police officer with the City of Memphis, Tennessee. Officer Carter may be served with process at Memphis Police Department (Ridgeway Station) at 3840 Ridgeway Road, Memphis, Tennessee 38115.

## IV. FACTS

9.      On or about September 10, 2018, Plaintiff, Brandon Boddy, was at his residence located at 6743 Seven Valley Drive, Memphis, Shelby County, Tennessee along with his live-in girlfriend, Felicia Henderson and her minor sister, J.M.

10.     Michelle Walton, the minor child's mother, was visiting at the Plaintiff's residence of 6743 Seven Valley Drive, Memphis, Shelby County, Tennessee.

11.     As Plaintiff was sleeping, he was awakened by an argument between his girlfriend's minor sister, J.M., and the minor's mother, Michelle Walton.

12.     Michelle Walton wanted her daughter, J.M., to come back home to stay with her at her residence which Ms. Walton shared with her husband. J.M. responded to Ms. Walton "No, I don't want to stay with him, mom. I want you to leave him."

13.     Michelle Walton then became very belligerent and angry with Plaintiff's girlfriend, Felicia Henderson, blaming Ms. Henderson for J.M.'s refusal of wanting to come move back home to live with her and the husband.

14.     Michelle Walton and Plaintiff's girlfriend, Felicia Henderson, exchanged words while Plaintiff attempted to deescalate the confrontation between Walton and Henderson because he was afraid they would awake the children in the other room sleeping.

15.     As Plaintiff proceeded to get Walton and Henderson outside to avoid waking the children, the argument continued outside between Walton and Henderson.

4

16.     Michelle Walton then asked J.M. to chose between her (Michelle Walton) and Felicia Henderson. J.M. told her mom she wanted to live with her sister, Felicia Henderson, until Michelle Walton found a place to stay away from her husband, J.M.'s step-father.

17.     Michelle Walton responded to J.M. by telling her she could stay with Felicia Henderson.

18.     As Felicia Henderson and the minor, J.M. left together, the Plaintiff and Michelle Walton stood outside discussing the events that had taken place.

19.     Plaintiff encouraged the mother, Michelle Walton, to listen to her daughter, J.M., and to think about the abuse and what it could lead to if she stayed with her husband. Plaintiff explained to Michelle Walton that her daughter loves her and wants to stay with her, but just not with the husband, J.M.'s step-father.

20.     Plaintiff advised Michelle Walton to let the situation calm down and come back in the morning to talk to her daughter, J.M.

21.     While talking with Michelle Walton, Plaintiff's two-year old son had awakened from his sleep and came outside. Plaintiff explained to Ms. Walton that he had to get his son back in the house and back to bed and he would talk to her later. Michelle Walton calmly left the residence.

22.     An hour or two later, Plaintiff was sitting in his living room awaiting his girlfriend and J.M.'s return home when he saw bright lights in his front yard.

23.     Officers D. Kinsler and W. Carter arrived at the residence of Plaintiff inquiring about the whereabouts of J.M.

24.     One of the officers explained they had a report of a minor child being held in the Plaintiff's home and the minor needed to come out.

25.     Plaintiff explained to Officer Kinsler and Officer Carter that there were only his three (3) children in the home and they were asleep.

26.     Officer Kinsler and Officer Carter continued to ask Plaintiff about who was in his home.

27.     Officer Kinsler and Officer Carter then asked if they could search the Plaintiff's home and the Plaintiff responded, "No."

28.     Officer Kinsler and Officer Carter asked again about J.M.'s whereabouts and Plaintiff explained to the officers that she left with her sister.

29.     One of the Defendant Officers then asked if Plaintiff knew where they had gone and the Plaintiff responded "I don't know, but I can call Felicia."

30.     Michelle Walton, who was present while the police were at the residence of the Plaintiff, insisted that J.M. was in the Plaintiff's home.

31.     Plaintiff again stated to the officers there were no other children in the home except for his three (3) children who were sleeping.

32.     Plaintiff then attempted to call his girlfriend, Felicia Henderson, but she did not answer.

33.     One of the Defendant Officers asked again if they could search the Plaintiff's residence and the Plaintiff refused.

34.     Plaintiff explained to the Defendant Officers stating, "I am not trying to be an asshole or nothing, but my kids are sleep and I don't want to wake or scare them."

35.     One of the Defendant Officers stated to Plaintiff that he would get a warrant and the Plaintiff would have to cooperate.

36.     Plaintiff responded, "absolutely if [they] had one."

37.     Plaintiff attempted to reach Felicia Henderson again by phone and she answered the call. Plaintiff informed Ms. Henderson that police officers were at the residence attempting to press kidnapping charges and questioned him about her and J.M.'s whereabouts. Ms. Henderson replied that they were at their dad's house. Ms. Henderson then asked to speak with the Defendant

6

Officers and one of the officers spoke with Ms. Henderson on the phone. Ms. Henderson informed the officers that the minor, J.M. was with her and she would bring J.M. home.

38.     Plaintiff remained on the phone with Ms. Henderson as she and J.M. traveled back to Plaintiff's home.

39.     As the Plaintiff walked with the Defendant Officers to the end of his yard, the Defendant Officers demanded to the Plaintiff that "[he] need[ed] to go in the house."

40.     Plaintiff asked the Defendant Officers "why [did he] have to go in the house since [he] lived [t]here and [he was] in [his] yard."

41.     One of the Defendant Officers then demanded the Plaintiff again to go in the house and the Plaintiff again asked why.

42.     The officer explained that the Plaintiff and Ms. Walton had words and the Defendant Officers wanted to keep things cool.

43.     Plaintiff explained to the Defendant Officers that he was cool and that he was just waiting on his girlfriend to arrive. One of the Defendant Officers responded, "Okay."

44.     The other officer continuously demanded that Plaintiff go in the house and the Plaintiff continuously refused. Plaintiff repeatedly explained to said officer that he was in his yard and he could make Ms. Walton leave because he did not call them to his residence.

45.     The Officer responded, "[O]nce I am called, your home is my jurisdiction and this is my yard."

46.     Said Defendant Officer attempted to reach out and grab the Plaintiff. The Plaintiff stepped back and turned sideways with his hands up while still holding his phone. Officer Kinsler and Officer Carter then forcefully, intentionally, and violently rushed the Plaintiff to the ground.

47.     Plaintiff felt immediate pain in his right arm and yelled out "you broke my arm!"

7

48.   One of the Defendant Officers immediately responded, "Stop resisting."

49.   Plaintiff explained to Defendant Officers that he could not move his right arm.

50.   Officer Kinsler and Officer Carter then forced the Plaintiff's injured arm behind his back, placed him in handcuffs, forcefully picked him up off the ground by the same injured arm, and placed him in the squad car.

51.   Minutes after the Plaintiff was placed in the squad car, the Plaintiff's parents arrived at Plaintiff's residence inquiring about the events that had transpired.

52.   One of the Defendant Officers yelled at the Plaintiff's parents, "You want to go to jail too?"

53.   Moments later, Plaintiff's girlfriend arrived at the residence with J.M. While Ms. Henderson spoke with the Defendant Officers, Plaintiff was still in handcuffs with an injured/broken arm and in excruciating pain.

54.   Other officers arrived on the scene of the incident. One of the officers spoke with the Plaintiff and stated that he was informed that the Plaintiff had suffered an injury. Said officer informed the Plaintiff that emergency medical services had been called to check his injury.

55.   When the City of Memphis EMS arrived on the scene, the paramedic or one of the medical emergency team members examined the Plaintiff, while still in handcuffs, and stated he could not find any injury to the Plaintiff, placed the Plaintiff back in the squad car, and left the scene without transporting the Plaintiff to a medical facility for medical attention.

56.   While the officers completed paperwork, the Plaintiff remained in the squad car, handcuffed with an injured arm which was caused by Officer Kinsler and Officer Carter.

57.   Officer Kinsler and Officer Carter transported the Plaintiff in the squad car to Regional One Health for medical treatment.

58.   Upon arrival at Regional One Health, also commonly referred to as "The Med", Plaintiff

8

waited for a long period of time, still handcuffed with an injured arm, for an x-ray examination to be performed by the medical staff.

59.     After being examined by the emergency room physician, Plaintiff was informed that he had sustained a radius colles fracture to his wrist.  This injury was the direct result of Officer Kinsler and Officer Carter using excessive force due to a wrongful arrest.

60.     Plaintiff was placed in an arm cast and was taken into custody where he remained until 2 a.m. the next morning after the incident.

61.     Plaintiff was released on a $100.00 bond and was given a court date without a time to appear for court.

62.     Without having knowledge of the time he was to appear in court, Plaintiff went to the court clerk's office the same afternoon and court was not in session.

63.     Plaintiff then inquired about his court date and time and was informed that all charges against him had been dropped.

64.     Plaintiff suffered embarrassment and humiliation due to his arrest in front of his family and neighbors.

## V. CIVIL RIGHTS CLAIM

65.     Plaintiff realleges paragraphs 1 through 64 of this Complaint and incorporate them herein by reference.

66.     The Civil Rights Act, codified as 42 U.S.C. § 1983, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

67.     Plaintiff alleges that Defendants, jointly and/or severally, deprived him of his Fourth and

9

First Amendment rights, and those rights, privileges, and immunities secured by the Fifth and Eighth Amendments to the Constitution as incorporated and applied to the states through the Fourteenth Amendment. Defendants violated Plaintiff's rights in the following ways:

> A.    By falsely arresting Plaintiff in violation of the Fourth Amendment and its reasonableness standard to be free from unreasonable, unlawful search and seizure, when no probable cause existed to make an arrest;

> B.    By using their badge, uniform, and authority invested by MPD to arrest Plaintiff in direct retaliation against Plaintiff's exercise of their rights to freedom of speech in violation of the First Amendment.

> C.    By using excessive force when detaining Plaintiff;

> D.    By failing to intervene while companion Defendant Officer violated Plaintiff's constitutional rights.

> E.    By failing to provide supervision and/or proper training to prevent such incidents of excessive force, First Amendment retaliatory conduct, and false arrest.

Defendants' violations of Plaintiff's constitutional rights resulted in him suffering and were a direct cause of his injuries.

## A. CLAIM ONE: 42 U.S.C. § 1983 — PEACE OFFICER LIABILITY

### 1. <u>False Arrest</u>

68.    Plaintiff realleges paragraphs 1 through 67 of this Complaint and incorporates them herein by reference.

69.    Plaintiff brings this claim against Officer Kinsler and Officer Carter, individually as well as in their official capacity, pursuant to 42 U.S.C. § 1983 and for punitive damages.

70.    At all material times, Defendant Officers were acting under color of state law as agents and employees of Defendant City. Defendant Officers wore their official MPD uniform and were acting within the course and scope of their duties as Memphis Police Officers at all times relevant

during this cause of action.

71.     Plaintiff demonstrates how Defendant Officers violated his federal constitutional rights and civil liberties guaranteed by the Fourth and Fourteenth Amendments by falsely arresting him.

72.     Defendant Officers unlawfully acted under the color of state law to deprive Plaintiff of his Fourth Amendment right to be free from unlawful seizure by arresting Plaintiff without a warrant, without witnessing a criminal act, and without probable cause to believe a crime had occurred or was about to occur.

73.     No reasonable officer, considering the facts and circumstances within Defendant Officers' knowledge, would have believed Plaintiff had not committed or was committing a criminal offense.

74.     Defendant Officers used and abused their badges and their authority bestowed by MPD to interfere with Plaintiff's liberty without reasonable and just cause in violation of the Fourth Amendment.

75.     Defendant Officers lacked probable cause to arrest Plaintiff based on the surrounding circumstances of his arrest.

76.     At the time of the incident, there were no outstanding warrants for Plaintiff's arrest.

77.     As a direct and proximate cause of this false arrest, Plaintiff suffered federal civil liberty violations, public humiliation, physical injury, medical expenses, lost wages, and mental and emotional distress.

## 2.  First Amendment Retaliation

78.     Plaintiff realleges paragraphs 1 through 77 of this Complaint and incorporates them herein by reference.

79.     Plaintiff brings this claim against Officer Kinsler and Officer Carter, individually as well as in their official capacity, pursuant to 42 U.S.C. § 1983 and for punitive damages.

11

80.     At all material times, Defendant Officers were acting under color of state law as agents and employees of Defendant City. Defendant Officers wore their official MPD uniform and were acting within the course and scope of their duties as Memphis Police Officers at all times relevant to this cause of action.

81.     Plaintiff contends that Defendant Officers violated his federal constitutional guarantees of the First Amendment, incorporated to the states by the Fourteenth Amendment, by retaliating against the exercise of his right to speak freely.

82.     Defendant Officers willfully deprived Plaintiff of the constitutional guarantees of freedom of speech that forbid the states to punish the use of words or language that does not fall within narrowly limited classes of speech.

83.     Plaintiff's speech neither incited, produced, or threatened to incite or produce imminent violence or lawless action and was unlikely to incite, produce, or threaten imminent violence or lawlessness. Plaintiff's arrest as a result of his speech violated his right to speak freely.

84.     Defendant Officers retaliated against Plaintiff for explaining that he was at his residence and that he had not committed any crime, and for denying the Defendant Officers access into his home after said officers did not present a proper search warrant.

85.     After Plaintiff consistently informed the officers that the minor, J.M. was not in his home and that she was with her sister, and the officers speaking with the Plaintiff's girlfriend and she confirming to the officers that the minor, J.M., was in fact with her, Defendant Officers still arrested the Plaintiff, claiming resisting arrest after injuring the Plaintiff.

86.     As a direct and proximate cause of Defendant Officers' retaliation, Plaintiff suffered federal civil liberty violations, public humiliation, physical injury, medical expenses, lost wages, and mental and emotional distress.

12

### 3. Excessive Force

87.     Plaintiff realleges paragraphs 1 through 86 of this Complaint and incorporates them herein by reference.

88.     Plaintiff brings this claim against Officer Kinsler and Officer Carter, individually as well as in their official capacity, pursuant to 42 U.S.C. § 1983 and for punitive damages.

89.     At all material times, Defendant Officers were acting under color of state law as agents and employees of Defendant City.  Defendant Officers wore their official MPD uniform and were acting within the course and scope of their duties as Memphis Police Officers at all times relevant to this cause of action.

90.     Plaintiff asserts Defendant Officers violated her federal constitutional guarantees of the Fourth Amendment, incorporated to the states by the Fourteenth Amendment, to be free from excessive force.

91.     Force is excessive, and therefore violates the Fourth Amendment, if it is not reasonable in light of the circumstances facing the officer.  *See Graham v. Connor*, 490 U.S. 386, 398 (1989).   The facts and circumstances of this case show that Defendant Officers' act of arresting Plaintiff was excessive and unreasonable.

92.     At the time of the incident, Defendant Officers had no reason to believe Plaintiff was armed or dangerous.

93.     Plaintiff made no violent movements towards Defendant Officers or any other person that could be interpreted as threatening.

94.     Plaintiff made no verbal threats to Defendant Officers or any other person.

95.     Plaintiff did not commit a criminal act in Defendant Officers' presence warranting arrest.

96.     Officer Defendants did not have probable cause to arrest Plaintiff.

97.     As a result of Defendant Officers' actions, the City of Memphis EMS Services were called

to the scene of the incident but did not transport the Plaintiff to a medical facility as they were informed by Officer Defendants that the Plaintiff would be transported while in the custody of the City of Memphis Police Department.

98.     Plaintiff was then transported from the scene of the incident to Regional One Health Center by Officer Kinsler and Officer Carter in the patrol car.

99.     Plaintiff also suffered a forearm fracture, excruciating pain, embarrassment, and humiliation due to Defendant Officers' excessive and unwarranted force.

100.    Plaintiff visited the emergency room at Regional One Health Center as a result of this incident where his arm was placed in an arm cast and he was prescribed medications.

101.    Defendant Officers' actions were unreasonable and unwarranted under the circumstances when comparing or balancing the amount of force used against the need for the force under the current circumstances.

102.    Therefore, by using subjectively and objectively unreasonable force while acting under color of state law, Defendant Officers violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

103.    As a direct and proximate cause of Defendant Officers' excessive force, Plaintiff suffered federal civil liberty violations, public humiliation, physical injury, medical expenses, lost wages, and mental and emotional distress.

### 4.   Failure to Intervene – Officer Kinsler and Officer Carter, Respectively

104.    Plaintiff realleges paragraphs 1 through 104 of this Complaint and incorporates them herein by reference.

105.    Plaintiff brings this claim against Officer Kinsler and Officer Carter, individually as well as in their official capacity, pursuant to 42 U.S.C. § 1983 and for punitive damages.

106.    At all material times, Defendant Officers were acting under color of state law as agents

14

and employees of Defendant City. Defendant Officers wore their official MPD uniform and were acting within the course and scope of their duties as Memphis Police Officers at all times relevant to this cause of action.

107.   Plaintiff asserts Defendant Officers violated his federal constitutional guarantees of the Fourth Amendment, incorporated to the states by the Fourteenth Amendment, and her Substantive Due Process rights by failing to intervene as companion officers.

108.   Officers have a duty to protect individuals from constitutional violations by fellow officers. Therefore, an officer who witnesses a fellow officer violating an individual's constitutional rights is liable to the victim for failing to intervene.

109.   Defendant Officers failed to protect Plaintiff from a danger they proactively created and aggravated.

110.   Officer Kinsler and Officer Carter aggressively and unreasonably charged at the Plaintiff and tackled him to the ground. Their actions were unnecessary and excessive in light of the circumstances surrounding the incident.

111.   Defendant Officers slamming Plaintiff's body to ground with excessive force and caused physical harm to Plaintiff's person.

112.   Defendant Officers' actions and inactions were egregious and arbitrary.

113.   Further, Plaintiff was subjected to and sustained substantial injury to his wrist as direct cause of Defendant Officers' actions and conduct.

114.   Defendant Officers failed to prevent one another from causing or placing Plaintiff in direct and an unreasonable risk of harm, further violating his federal civil liberties.

115.   Defendant Officers, individually, had reason to know that a constitutional violation had been committed by the other, and Defendant Officers had a realistic opportunity to intervene to

prevent the risk of harm from occurring.

116.    Defendant Officers also shared a law enforcement association where each respectively understood the policies and procedures in detaining and/or arresting a suspect and that such policies and procedures that would immediately violate an individual's constitutional rights if not complied with.

117.    As a direct and proximate cause of Defendant Officers' actions and inactions, Plaintiff suffered federal civil liberty violations, public humiliation, physical injury, medical expenses, lost wages, and mental and emotional distress.

## B.  CLAIM TWO: 42 U.S.C. § 1983 — MUNICIPAL LIABILITY

118.    Plaintiff realleges paragraphs 1 through 117 of this Complaint and incorporate them herein by reference.

119.    Plaintiff asserts that his constitutional rights were violated when Defendant Officers falsely arrested Plaintiff, retaliated against Plaintiff's use of his First Amendment right to speak freely, used excessive force to execute said arrest, and each officer respectively failed to intervene as he witnessed his fellow officer violate Plaintiff's constitutional rights.

120.    Defendant City is also liable under 42 U.S.C. § 198 for failing to supervise and train its police officers. In addition, the City's failure to supervise and train its police officers, and the City's willful blindness towards the constitutional violations of its employees, constitute gross negligence and/or deliberate and conscious indifference to citizens' rights, including the right to be free from constitutional violations under 42 U.S.C. § 1983 and 1988.

121.    Additionally, municipalities may be held liable under 42 U.S.C. § 1983 for constitutional torts that are committed pursuant to a policy, procedure, practice, or custom of the municipality.

Even if the City's practice of overlooking constitutional torts was not authorized by an officially adopted policy, the practice may be so common and well-settled that it fairly represents official policy. *See Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397,404 (1997).

122.    In the present case, the City's formal and informal actions reflect a policy, practice, custom and procedure authorizing and allowing constitutional rights violations. Consequently, the City is liable for harm caused to Plaintiff as a result of its policies, practices customs and procedures.

123.    Defendant City is liable for the constitutional torts of Defendant Officers because the City sanctioned the following customs, practices, and policies:

   (A)   Using unreasonable and excessive force to carry out detentions and/or arrests;

   (B)   Arbitrarily using arrests when they are not necessary or permitted by law;

   (C)   Ignoring the serious need for training and supervision of its officers regarding its policies and procedures when conducting detentions and/or arrests;

   (D)   Failing to adequately supervise and/or observe its officers;

   (E)   Failing to adequately train officers regarding the availability of alternative means other than the use of arrests, force, or excessive force without probable cause;

   (F)   Failing to discharge officers who have shown a pattern or practice of falsely arresting citizens;

   (G)   Failing to discharge officers who have shown a pattern or practice of using excessive force; and

   (H)   Adopting a practice whereby officers who are unfit for peace officer duties, as shown by prior actions in the line of duty, are allowed to retain their positions.

124.    At the time Defendant Officers arrested Plaintiff, they were acting pursuant to an official city policy, practice, custom and procedure overlooking and/or authorizing police officer's excessive use of force and unlawful arrests. *See Monell v. New York City Dept. of Social Servs.*,

436 U.S. 658, 659 (1978).

125.    Thus, Defendant City's failure to supervise and train its police officers, and its willful blindness towards the constitutional violations of its employees was a direct cause of Plaintiff's injuries.

### 1.  Failure to Train a Single Police Officer.

126.    Plaintiff realleges paragraphs 1 through 125 of this Complaint and incorporate them herein by reference.

127.    A city may be held liable for its failure to train a single police officer when the policymakers know about the pattern of unconstitutional misconduct and the officer's acts were so egregious that the city should have had clear warning that the particular officer posed a danger to citizens. *See Pineda v. City of Houston*, 124 F. Supp. 2d 1057, 1068 (S.D. Tex. 2000).

128.    With respect to Defendant Officers, the need for additional or different training was necessary considering the circumstance of this incident. Defendant City knew that Defendant Officers were likely to engage in other acts of wrongful conduct, yet Defendant City continuously failed to discipline, supervise, or train Defendant Officers.

129.    Defendant City's acts and omissions, when viewed objectively, involved an extreme degree of risk considering the probability and magnitude of harm to citizens. Defendant City had actual, subjective awareness of the risks involved, but nevertheless preceded with conscious indifference to the rights, safety, or welfare of others, including Plaintiff.

130.    Thus, in light of the substantial risks posed by Defendant Officers, Defendant City's failure to train them constitutes gross negligence and/or deliberate and conscious indifference to the rights, safety, and welfare of others, including Plaintiff.

## VI. DAMAGES

131.    Plaintiff realleges paragraphs 1 through 130 of this Complaint and incorporate them herein by reference.

132.    In addition to the damages mentioned in the preceding paragraphs as a direct and proximate result of the intentional and unlawful conduct of Defendant Officers and Defendant City, Plaintiff has suffered, and in reasonable probability will continue to suffer damages.

133.    In addition, Defendant Officers are liable for compensatory and exemplary damages arising from their negligence and gross negligence.

## VII. ATTORNEY'S FEES

134.    Plaintiff realleges paragraphs 1 through 133 of this Complaint and incorporate them herein by reference.

135.    Plaintiff is entitled to recover attorney's fees and costs as required by the Civil Rights Attorney's Fees Award Act of 1976. 49 U.S.C. § 1988. Plaintiff hereby requests that the Court and jury award him attorney's fees and expenses.

## VIII. JURY DEMAND

136.    Plaintiff respectfully demands a jury trial pursuant to FED. R. CIV. P. 8(b).

## VIIII. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendants be cited to appear and answer herein, and that Plaintiff has judgment against Defendants, jointly and/or severally, for actual damages above the jurisdictional minimum of the Court; exemplary damages; pre-judgment interest; post-judgment interest, court costs, attorney's fees and expenses, and all other relief to which Plaintiff is justly entitled, at law or in equity.

Respectfully submitted this the 22nd day of March, 2019.

ATTORNEY FOR PLAINTIFF

**/s/ John Keith Perry, Jr.**
John Keith Perry, Jr., MSB No.: 99909

**PERRYGRIFFIN, P.C.**
5699 Getwell Road
Building G, Suite 5
Southaven, MS 38672
Tele: (662) 536-6868
Fax: (662) 536-6869
Email: JKP@PerryGriffin.com