```
            IN THE UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF TENNESSEE
                      WESTERN DIVISION
```

|   |   |   |
|---|---|---|
| BRANDON BODDY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-02190 |
| | ) | |
| CITY OF MEMPHIS, TENNESSEE; OFFICER D. KINSLER, in his official and individual capacity; and OFFICER W. CARTER, in his official and individual capacity, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER**

This case arises from the arrest of Plaintiff Brandon Boddy by City of Memphis police officers. Before the Court is Defendant City of Memphis, Tennessee's (the "City") Motion for Judgment on the Pleadings, filed on October 28, 2019. (ECF No. 32.) Boddy responded on February 5, 2020. (ECF No. 33.) On February 11, 2020, the City replied by filing a motion to strike Boddy's untimely response. (ECF No. 34.) On March 3, 2020, the Court denied the City's motion to strike. (ECF No. 36.)

For the foregoing reasons, the City's Motion for Judgment on the Pleadings is GRANTED.

**I.  Background**

In September 2018, Boddy was at his Memphis residence with his live-in girlfriend, Felicia Henderson; Henderson's minor sister, J.M.; and J.M.'s mother, Michelle Wilson. (ECF No. 1 ¶¶ 9-10.) There was an argument among Wilson, Henderson, and J.M. about where J.M. should reside. (See id. ¶¶ 11-17.) Boddy was asleep at the beginning, but woke up and tried to deescalate the argument. (See id. ¶¶ 11, 14.) J.M. decided she would live with Henderson, and Wilson agreed. (See id. ¶¶ 16-17.) J.M. and Henderson left Boddy's residence together. (Id. ¶ 18.) Wilson left after a brief discussion with Boddy. (Id. ¶¶ 18-21.)

About two hours later, Officers DeKevious Kinsler and Walter Carter ("the Officers") arrived at Boddy's residence and asked about the whereabouts of J.M., explaining that they had a report of a minor child being held at the residence. (Id. ¶¶ 22-24.) About the same time, Wilson arrived. (Id. ¶ 30.) After explaining that J.M. was not in the house, but away with Henderson, Boddy called Henderson and asked her to bring J.M. back to the residence. (See id. ¶¶ 23-38.) Henderson spoke with the Officers on Boddy's cellular telephone and informed them that she would bring J.M. back to the house. (Id. ¶¶ 37-38.)

2

While waiting for Henderson and J.M., Boddy and Wilson "had words." (Id. ¶ 42.) As Boddy walked with the Officers to the end of his yard, the Officers told Boddy that "he needed to go in the house" to "keep things cool" between Boddy and Wilson. (See id. ¶¶ 39-44.) Boddy explained that "he was cool" and that he was waiting for Henderson. (Id. ¶ 43.) One of the Officers responded, "Okay" but the other continued to tell Boddy to go into the house. (Id. ¶¶ 43-44.) Boddy told the demanding Officer that Boddy was in his own yard and that he could make Wilson leave because Boddy had not called the Officers to his residence. (Id. ¶¶ 44.) The demanding Officer responded, "once I am called, your home is my jurisdiction and this is my yard." (Id. ¶ 45.) The Officer then attempted to grab Boddy. (Id. ¶ 46.) Boddy stepped back and turned sideways with his hands up while holding his cellular telephone. (Id.) Both Officers then forcefully "rushed [Boddy] to the ground." (Id.) Boddy immediately felt pain in his right arm and yelled out, "you broke my arm!" (Id. ¶ 47.) One of the Officers responded, "Stop resisting." (Id. ¶ 48.) Boddy explained to the Officers that he could not move his right arm. (Id. ¶ 49.) The Officers forced Boddy's arm behind his back, placed him in handcuffs, forcefully picked him up from the ground by his injured arm, and placed him in the squad car. (Id. ¶ 50.)

Emergency medical services arrived at Boddy's residence, examined Boddy, who was still in handcuffs, and could find no injury. (Id. ¶ 55.) Boddy was returned to the squad car, and the paramedics left the residence without transporting Boddy to a medical facility. (Id.)

The Officers later took Boddy to Regional One Health. (Id. ¶¶ 56-57.) After having been examined by the emergency room physician, Boddy was told that he had sustained a radius colles fracture to his wrist. (Id. ¶ 59.) Boddy was placed in an arm cast and was taken into custody, where he remained until 2:00 a.m. the next morning. (Id. ¶ 60.) Boddy was then released on a $100.00 bond and given a court date without a time to appear. (Id. ¶ 61.) Later that afternoon, Boddy asked about his court date and time and was told that all charges against him had been dropped. (Id. ¶ 63.)

On March 25, 2019, Boddy filed the current action alleging various constitutional violations and state law claims arising from his arrest. (Id.) He brings 42 U.S.C. § 1983 claims against the Officers in their individual and official capacities for retaliation, false arrest, failure to intervene, and excessive force, in violation of the First, Fourth, and Fourteenth Amendments. (Id. ¶¶ 68-117.) Boddy brings § 1983 claims against the City for failure to supervise and train, and for having a custom or policy authorizing constitutional

4

violations. (See id. ¶¶ 118-130.) He makes cursory references to Fifth and Eighth Amendment violations, (see id. ¶ 67), and to state law claims of negligence, false arrest, false imprisonment, and emotional distress, (see id. ¶¶ 77, 86, 103, 117, 120, 130, 133), against both the City and the Officers. Boddy seeks compensatory and punitive damages, and attorneys' fees pursuant to 42 U.S.C. § 1988. (Id. ¶¶ 131-35.)

On October 28, 2019, the City filed its Motion for Judgment on the Pleadings. (ECF No. 32.) Boddy responded on February 2, 2020. (ECF No. 33.) On February 11, 2020, the City filed a motion to strike Boddy's response and a motion to stay pending the Court's ruling on the Motion for Judgment on the Pleadings. (ECF No. 34.) On March 3, 2020, the Court denied the motion to strike and granted the motion to stay. (ECF No. 36.) The Officers have not addressed these motions.

## II. Jurisdiction

The Court has federal question jurisdiction. Under 28 U.S.C. § 1331, district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." Boddy asserts a right to relief against the City and the Officers under § 1983. That claim arises under the laws of the United States.

The Court has supplemental jurisdiction over Boddy's Tennessee-law claims. See 28 U.S.C. § 1367(a). Those claims

derive from a "common nucleus of operative fact" with Boddy's federal claims against the City and the Officers. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966); Soehnlen v. Fleet Owners Ins. Fund, 844 F.3d 576, 588 (6th Cir. 2016).

### III. Standard of Review

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." A Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." Paskvan v. City of Cleveland Civil Serv. Comm'n, 946 F.2d 1233, 1235 (6th Cir. 1991). The standard of review for a judgment on the pleadings is the same as the standard for a motion to dismiss under Rule 12(b)(6). Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010).

Rule 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cnty., 814 F.2d 277, 279 (6th Cir. 1987)). A motion to dismiss is designed to test whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases that would

6

waste judicial resources and result in unnecessary discovery. See Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). If a court decides, in light of its judicial experience and common sense, that the claim is not plausible, the case may be dismissed at the pleading stage. Iqbal, 556 U.S. at 679. The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555).

A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A complaint need not contain detailed factual allegations. However, a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

7

**IV. Analysis**

The City argues that Boddy fails to establish § 1983 municipal liability. (ECF No. 32 at 5-13.) The City argues that Boddy fails to state a claim under the Tennessee Governmental Tort Liability Act ("GTLA"), T.C.A. §§ 29-20-101, et seq., (id. at 14-15), and that the City cannot be liable for punitive damages on any claim, (id. at 15).

**A. Section 1983 Municipal Liability**

Section 1983 provides a cause of action to those who suffer the deprivation of a federal right by someone acting under color of state law. Bright v. Gallia Cty., 753 F.3d 639, 660 (6th Cir. 2014). Section 1983 does not impose vicarious liability on municipalities for their employees' actions. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). When a § 1983 plaintiff seeks to impose liability on a municipality, in addition to adequately pleading the violation of a constitutional right,[1] the plaintiff must plead that a municipal policy or custom caused the plaintiff's injury. See Monell, 436 U.S. at 694; Bible Believers v. Wayne Cty., 805 F.3d 228, 260 (6th Cir. 2015) (en banc). To establish a municipal policy or custom, a plaintiff must show: "(1) the existence of an illegal policy or legislative

---

[1] Because Boddy has insufficiently pled Monell liability against the City, the Court need not decide at this stage whether the Complaint adequately alleges constitutional violations by the Officers.

8

enactment; (2) that an official [with] final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence in federal rights violations." Stewart v. City of Memphis, No. 2:16-cv-02574-SHM, 2019 WL 332812, at *12 (W.D. Tenn. Jan. 25, 2019), aff'd sub nom. Stewart v. City of Memphis, 788 F. App'x 341 (6th Cir. 2019) (citing Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir. 2013)). Boddy relies on the third and fourth grounds: failure to train and custom of tolerance. (ECF No. 1 ¶¶ 120-125.)

To succeed on a failure to train claim, a plaintiff must show: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." Brown v. Chapman, 814 F.3d 447, 463 (6th Cir. 2016) (quoting Plinton v. Cty. of Summit, 540 F.3d 459, 464 (6th Cir. 2008)).

To succeed on a custom of tolerance claim, a plaintiff must show: (1) a clear and persistent pattern of misconduct; (2) notice or constructive notice on the part of the municipality; (3) the defendant's tacit approval of the misconduct, such that deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and (4) that the defendant's custom was the moving force or direct causal link to

9

the violations. Stanfield v. City of Lima, 727 F. App'x 841, 851 (6th Cir. 2018) (quoting Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005)); see also Wright v. City of Euclid, 962 F.3d 852, 881 (6th Cir. 2020).

In the context of § 1983 municipal liability, district courts in the Sixth Circuit have interpreted pleading standards strictly. Spainhoward v. White Cty., 421 F. Supp. 3d 524, 544 (M.D. Tenn. 2019); Epperson v. City of Humboldt, 140 F. Supp. 3d 676, 685 (W.D. Tenn. 2015) (citations omitted). Boilerplate allegations of municipal liability or a policy or custom are generally insufficient. Minick v. Metro. Gov't of Nashville, No. 3:12-cv-0524, 2014 WL 3817116, at *2 n.3 (M.D. Tenn. Aug. 4, 2014) (collecting cases).

Boddy inadequately pleads municipal liability for First and Fourth Amendment violations because his pleadings are conclusory and insufficiently factual. (See ECF No. 1 ¶¶ 76(E), 120-130.) Boddy pleads that the City is liable for the Officers' conduct because the City sanctioned the following customs, practices, and policies:

(A) Using unreasonable and excessive force to carry out detentions and/or arrests;

(B) Arbitrarily using arrests when they are not necessary or permitted by law;

(C) Ignoring the serious need for training and supervision of its officers regarding its policies and procedures when conducting detentions and/or arrests;

    (D)    Failing to adequately supervise and/or observe its officers;

    (E)    Failing to adequately train officers regarding the availability of alternative means other than the use of arrests, force, or excessive force without probable cause;

    (F)    Failing to discharge officers who have shown a pattern or practice of falsely arresting citizens;

    (G)    Failing to discharge officers who have shown a pattern or practice of using excessive force; and

    (H)    Adopting a practice whereby officers who are unfit for peace officer duties, as shown by prior actions in the line of duty, are allowed to retain their positions.

(ECF No. 1 ¶ 123.) Boddy does not plead any facts that would plausibly establish those customs, practices, and policies. That is insufficient. See Brent v. Wayne Cty. Dep't of Human Servs., 901 F.3d 656, 698 (6th Cir. 2018), cert. denied, 139 S. Ct. 1551 (2019) (affirming dismissal of a Monell claim because the complaint "failed to allege 'a single fact that suggests, plausible or otherwise,' that the [police officers'] purported [constitutional violations] were 'the result of a custom, policy, or practice of [the city]'") (citation omitted)); Bickerstaff v. Lucarelli, 830 F.3d 388, 402 (6th Cir. 2016) (similar).

    Boddy does not plead prior instances that show the City was on notice that its training and supervision were deficient. He conclusorily pleads that the City "knew that [the Officers] were likely to engage in other acts of wrongful conduct, yet [the City] continuously failed to discipline, supervise, or train

[the Officers]." (ECF No. 1 ¶ 128.) That is insufficient. Burgess, 735 F.3d at 478 (citing Miller v. Sanilac Cnty., 606 F.3d 240, 255 (6th Cir. 2010) (a failure-to-train claim requires a showing of "'prior instances of unconstitutional conduct demonstrating that the [municipality] ha[d] ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'")); Okolo v. Metro. Gov't of Nashville, 892 F. Supp. 2d 931, 944 (M.D. Tenn. 2012) (dismissing claims against municipality because the defendant "pleads no facts and cites no prior instances of unconstitutional conduct to support his conclusory allegation that [the municipality] was aware of a history of illegal arrests, much less that they ignored them").

Boddy pleads that, "[w]ith respect to [the Officers], the need for additional or different training was necessary considering the circumstances of this incident." (ECF No. 1 ¶ 128.) Boddy assumes that his injury gives rise to the inference that the City failed in training and disciplining the officers. "To infer the existence of a city policy from the isolated misconduct of low-level officers, and then hold the city liable based on that policy, would amount to the very strict respondeat superior liability rejected by the Supreme Court in Monell and its progeny." Epperson, 140 F. Supp. 3d at 686.

12

Boddy does not support his custom of tolerance claim by pleading prior instances of similar misconduct or the City's failure to investigate it.  He conclusorily pleads that, "[i]n the present case, the City's formal and informal actions reflect a policy, practice, custom and procedure authorizing and allowing constitutional rights violations."  (ECF No. 1 at ¶ 122.)  That is insufficient.  See Burgess, 735 F.3d at 478 ("a custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims").

To the extent Boddy pleads a Fifth Amendment violation against the City, (see ECF No. 1 ¶ 67), that argument is "null[]," because the Fifth Amendment's Due Process Clause applies only to actions of the federal government.  Scott v. Clay Cty., Tenn., 205 F.3d 867, 873 n.8 (6th Cir. 2000).

To the extent Boddy pleads an Eighth Amendment violation against the City, he fails because "the Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences." Aldini v. Johnson, 609 F.3d 858, 864 (6th Cir. 2010) (citing Whitley v. Albers, 475 U.S. 312, 318–322 (1986)); see Brooks v. Sevier Cty., 279 F. Supp. 2d 954, 962 (E.D. Tenn. 2003).

The City's Motion for Judgment on the Pleadings on Boddy's § 1983 claims is GRANTED.

### B. GTLA Municipal Liability

"State law claims against governmental entities and their employees are governed [exclusively] by the GTLA." Epperson, 140 F. Supp. 3d at 689 (citing Tenn. Code Ann. § 29-20-101). The GTLA waives common law sovereign immunity and permits litigants to sue municipalities for injuries sounding in negligence. Partee v. City of Memphis, 449 F. App'x 444, 447 (6th Cir. 2011) (citing Tenn. Code Ann. § 29-20-205).

The GTLA contains exceptions retaining immunity. One is the "intentional tort exception," which bars claims for injuries arising out of "[f]alse imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights." Tenn. Code Ann. § 29-20-205(2); Limbaugh v. Coffee Medical Ctr., 59 S.W.3d 73, 81 (Tenn. 2001). The reference to "civil rights" has been interpreted to include claims arising under § 1983. Partee, 449 F. App'x 444, 448 (citing Johnson v. City of Memphis, 617 F.3d 864, 872 (6th Cir. 2010)). Another exception is the "discretionary function exception," which bars claims for injuries arising out of "[t]he exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused."

14

Tenn. Code Ann. § 29-20-205(1); Giggers v. Memphis Hous. Auth., 363 S.W.3d 500, 507 (Tenn. 2012).

Boddy's negligence, false imprisonment, false arrest, and emotional distress claims against the City fall under the GTLA's immunity-retention exceptions. To the extent his negligence claim arises from the facts underlying his § 1983 claims,[2] it is barred by the civil rights category of the intentional tort exception. See Johnson, 617 F.3d at 872 ("Plaintiff's claim regarding the dispatcher's negligence arises out of the same circumstances giving rise to her civil rights claim under § 1983. It therefore falls within the exception listed in § 29-20-205[2], and the City retains its immunity."); Tinkle v. Dyer Cty., Tennessee, No. 18-01124-STA-EGB, 2018 WL 6840155, at *2 (W.D. Tenn. Dec. 31, 2018) ("[A] plaintiff cannot circumvent a defendant's immunity by couching its civil rights claim as one of negligence.") (citing Campbell v. Anderson Cty., 695 F. Supp. 2d 764, 778 (E.D. Tenn. 2010)).

To the extent Boddy's negligence claim arises from the City's alleged failure to train, supervise, and discipline its police department, it is barred by the discretionary function exception. Savage v. City of Memphis, 620 F. App'x 425, 429

---

[2] There is an analytical difference between a negligence claim based on an officer's conduct in arresting an individual and one based on the City's independent negligent acts in hiring, supervising, or disciplining an officer. Partee, 449 F. App'x at 449.

(6th Cir. 2015) ("[T]he sorts of determinations the [Memphis Police Department] must make in how it trains and supervises its employees, staffs its departments, and investigates the alleged wrongdoing of its employees place the Plaintiffs' direct-negligence claims squarely within the discretionary function exception.") (internal quotation marks omitted and alterations in original).

Boddy's false imprisonment claim against the City is barred by the civil rights category of the intentional tort exception. Carpenter v. Doe, No. 10-2425-STA, 2010 WL 4922640, at *11 (W.D. Tenn. Nov. 29, 2010); Hale v. Randolph, No. 1:02-cv-334, 2004 WL 1854179, at *17 (E.D. Tenn. Jan. 30, 2004) ("Because [plaintiff] asserts his false imprisonment . . . claim[] against the City in the context of a civil rights case, his alleged injuries arise out of 'civil rights' and the City is entitled to immunity from suit on these claims pursuant to the 'civil rights' exception in Tenn. Code Ann. § 29-20-205(2).").

Boddy's false arrest claim against the City is barred by the false arrest category of the intentional tort exception. Jones v. Yancy, No. 07-2263, 2010 WL 625392, at *4 (W.D. Tenn. Feb. 17, 2010).

Boddy's intentional infliction of emotional distress claim against the City is barred by the infliction of mental anguish category of the intentional tort exception. Dillingham v.

16

Millsaps, 809 F. Supp. 2d 820, 853 (E.D. Tenn. 2011); Stapp v. Wall, No. 3:08-cv-0101, 2008 WL 11510613, at *7 (M.D. Tenn. Oct. 6, 2008) ("[T]he reference to 'infliction of mental anguish' in the []GTLA applies . . . to intentional infliction of emotional distress [claims].") (citing Sallee v. Barrett, 171 S.W.3d 822 (Tenn. 2005)).

Boddy's negligent infliction of emotion distress claim is barred because it arises from the same circumstances that give rise to his civil rights claims. Grove v. Metro. Gov't of Nashville & Davidson Cty., No. 3:18-cv-01270, 2019 WL 2269884, at *7 (M.D. Tenn. May 28, 2019) ("The circumstance[] giving rise to [plaintiff's negligent infliction of emotional distress claim is] the same alleged wrongful act (i.e., [the officer's] use of excessive force) that gives rise to Plaintiff's Section 1983 claim. Therefore, [the municipality] retains its immunity because of the []GTLA's preservation of municipal immunity for injuries arising from civil rights.") (collecting cases).

The City's Motion for Judgment on the Pleadings on Boddy's GTLA claims is GRANTED.[3]

---

[3] Because the Court dismisses all claims against the City, it need not address the City's punitive damages arguments.

17

**V. Conclusion**

For the foregoing reasons, the City's Motion for Judgment on the Pleadings is GRANTED.  All claims against the City are DISMISSED.

So ordered this 28th day of July, 2020.

                                      /s/ *Samuel H. Mays, Jr.*
                                      Samuel H. Mays, Jr.
                                      UNITED STATES DISTRICT JUDGE